## Roe *versus* Wilbur.

1. Where the *locus in quo* in an action of trespass was vacant land not in the actual possession of the defendant, he could acquire no title by making and claiming to a boundary beyond his own tract taking in vacant land of the Commonwealth.

2. It is only when acts such as cutting wood, &c., are done within the boundaries of a man's own tract, whether claimed by settlement or survey, or by an elder title, that they can be used as evidence of such possession as farmers usually take of their own woodland.

3. A man can make title to vacant land only by personal residence ; not by running lines or building fences.

4. When title is granted by the Commonwealth, it draws to itself a constructive possession which enables the owner to maintain trespass against one who enters to do an act of wrong.

March 9th 1868.    Before STRONG, READ, AGNEW and SHARS-WOOD, JJ.    THOMPSON, C. J., at Nisi Prius.

Error to the Court of Common Pleas of *Susquehanna county:* No. 6, to January Term 1868.

This was an action of trespass *quare clausum fregit*, commenced March 19th 1866, by Jeremiah D. Wilbur against Henry H. Roe.

The plaintiff gave in evidence a warrant dated March 3d 1851, to Allen Gage, for 38 acres and 87 perches in Liberty township, adjoining amongst others N. Marvin on the east ;—patent to Gage dated May 14th 1857, and deed to plaintiff dated April 12th 1854, for the tract surveyed under the warrant.    He also gave evidence of the entry by the defendant on the tract, and cutting trees by him.

The defendant gave evidence that Nathan Marvin, some twenty-eight years before, had a clearing of 20 or 25 acres and a house on the lot.    Roe bought of Marvin in 1854 or 1855.    Silas Benedict and D. C. Marvin, witnesses called by the defendant, testified, on cross-examination, that Marvin and the defendant claimed that they were on the lands for which Biddle was agent, under a contract with Drinker.    John Boyle, also a witness for defendant, testified that he made a survey for a lot in Liberty in the name of Nathan Marvin, on lands known as the Nicholas Biddle lands.

The evidence of the defendant showed that Marvin, when in possession of the improvement, had used the *locus in quo*, which was woodland, within Gage's warrant, as farmers usually use their woodland, and with a marked line around his whole lot.

[Roe *v.* Wilbur.]

The court (H. W. Williams, A. J., of the Fourth District) charged :—

" The position of the defendant, that possession is necessary to support trespass for an injury to land, is well taken; but this possession may be either actual, as by residence or enclosure and cultivation, or it may be constructive. The law tacks the possession of unseated or wild land to the title, so that the real owner, whoever he may be, is esteemed to be constructively in possession. By virtue of such possession, he may maintain this form of action. The question in this case then is, had the plaintiff either actual or constructive possession as against the defendant of the land in question? The evidence shows that some twenty-eight or twenty-nine years ago, one Nathan Marvin entered upon a tract of land in Liberty township, defined its boundaries, made an improvement of some 20 to 30 acres, and built a house and log-barn thereon. In 1851, while Marvin was in possession of this lot of land, using the woodland adjacent to his cleared land as farmers usually use their woodland, and with a marked line around his whole lot, Allen Gage procured a warrant from the Commonwealth for 40 acres of the woodland embraced within Marvin's lines. This warrant was located in March 1851, and soon after, the Commonwealth, by her patent, conveyed her title to this 40 acres to Gage. Marvin sold to defendant in 1854, and about the same time Gage sold the land embraced in his warrant to the plaintiff.

" The defendant claims that by virtue of his residence and improvement maintained by himself, and those under whom he claims for many years, he was in the actual possession of all the land included within his lines; and that such actual adverse possession ousts the presumptive or constructive possession which the law tacks to title. This proposition would correctly express the rule of law as we understand it, if Marvin's whole claim had been made upon appropriated land, and his clearing and cultivation had been upon the same warrant with his woodland. But by the evidence in this case it appears that a portion of the land embraced within his lines was actually vacant. The defendant's surveyor who located the warrant so testifies. As to this, under the well-known rule, he could never, by mere lapse of time, have acquired title. No matter how great his improvements, or how long-continued his residence, the title of the Commonwealth would not have been divested. In 1851, then, when Gage's warrant was located, this vacant land was embraced by the lines of Marvin, and constituted part of his woodland. When the warrant was located, there had been no enclosure of any part of this land by Marvin, except by lines—no cultivation, no clearing. There has never been such clearing or cultivation since. Nothing has occurred to challenge the right of Gage or his vendee. No in-

[Roe *v.* Wilbur.]

vasion, actual, hostile or open, of his constructive possession has taken place.   The evidence shows the occasional cutting of wood, rails, &c., on this part of the woodland originally claimed by Marvin, but no such permanent, open and adverse use or possession of it as would oust the possession of the owner under the warrant to Gage. [It follows, then, that the plaintiff was in possession by virtue of his title of this woodland ; that being so in possession, this action is properly brought to redress any injury or trespass committed within his lines, and that your duties in this case are reduced to a computation of damages for such trespass as the evidence discloses]."

The verdict was for the plaintiff for $13.50.

The defendant took a writ of error, and assigned for error the part of the charge in brackets.

*W. H. Jessup,* for plaintiff in error, cited 6 Bac. Abr. 566 ; 3 Lev. 209 ; 2 Bulst. 268 ; Addleman *v.* Way, 4 Yeates 219 ; Torrence *v.* Irwin, 2 Id. 210 ; Mather *v.* Trinity Church, 3 S. & R. 517 ; Greber *v.* Kleckner, 2 Barr 291 ; Hole *v.* Rittenhouse, 1 Casey 491 ; King *v.* Baker, 5 Id. 200 ; Shoenberger *v.* Baker, 10 Harris 404.

*R. B. Little,* for defendant in error, cited Wright *v.* Guïer, 9 Watts 172 ; Criswell *v.* Altemus, 7 Id. 580 ; Burns *v.* Swift, 2 S. & R. 439 ; Adams *v.* Robinson, 6 Barr 271 ; Hole *v.* Rittenhouse, 1 Casey 494–5–6 ; Hughes *v.* Stevens, 12 Id. 320 ; Ewing *v.* Alcorn, 4 Wright 500 ; Altemus *v.* Trimble, 9 Barr 232 ; King *v.* Baker, 1 Casey 186 ; s. c. 5 Id. 206 ; 1 Chit. Pl. 177.

The opinion of the court was delivered, March 16th 1868, by

AGNEW, J.—At the trial the defendant attempted to defeat the plaintiff's action on the ground that he was in the actual possession of the *locus in quo.*   The judge denied the defence, stating that Marvin, under whom he claimed, had improved upon appropriated land, and that the woodland where the trespass was committed being vacant land of the Commonwealth, his possession could not be extended over it, by claiming to a certain boundary, and using the land for wood and making sugar.   In argument here it was denied that Marvin was upon appropriated land ; but the fact clearly appears in the testimony of Benedict, Marvin and Boyle, that he was by contract upon one of the Drinker or Biddle tracts, as the lands there are called.   As remarked by Coulter, J., in Henry *v.* Henry, 5 Barr 249, many things pass on the trial of a cause as admitted, and we cannot impute a wilful misstatement to the judge below, in the absence of any fact disclosed by the evidence to impugn or contradict what he has stated. The fact being as thus understood, the judge was correct in his

[Roe *v.* Wilbur.]

conclusion. It was said by C. J. Tilghman, in Graham *v.* Moore, 4 S. & R. 471, as early as the year 1818, that if the proprietor of a surveyed tract passes over his line and cuts wood upon the vacant land of the Commonwealth, so far from acquiring a right to the vacant land, he is to be considered a trespasser. Of annual entries to tap sugar-trees and boil the sap, it was said, in Adams *v.* Robinson, 6 Barr 272, that they constitute rather a succession of trespasses than an actual permanent occupancy of the ground. It is only when such acts are done within the boundaries of a man's own tract, whether claimed by settlement or survey, or by an elder or a junior title, they can be used as the evidence of such possession as farmers usually take of their woodland: 6 Harris 377; 8 Id. 163. The *locus in quo* being vacant land, and not in the actual possession of the defendant, his defence failed. According to numerous decisions, he could acquire no title by making and claiming to a boundary taking in the adjoining vacant land of the Commonwealth. It was decided in Overton *v.* Gibson, 2 Watts 384, that a settler who makes his improvement by mistake or otherwise on land previously appropriated obtains no title by settlement to the adjoining tract over which his enclosure extends. In that case, the settler had also taken out a warrant as well as extended his improvements over the part claimed. This has been followed in Adams *v.* Jackson, 4 W. & S. 69; Henry *v.* Henry, 5 Barr 247; Smith *v.* Beck, 1 Casey 106; and Lineweaver *v.* Crawford, 2 Id. 419. The reasons are stated by Rogers, J., in Overton *v.* Gibson, and grow out of the Act of 30th December 1786, and the personal residence which is the essential element of a settlement. The act defines it to be an actual personal resident settlement with the manifest intention of making it (the land) a place of abode and the means of supporting a family continued from time to time, unless interrupted by the enemy or going into the military service of the country during the war. The purpose of the Commonwealth was to draw population to her vacant land and build up the interests of the state. He who plants himself upon land already taken up, does the state no service in this respect, and he will not be permitted to thumb over her adjoining vacant lands to the exclusion of those who would fulfil her purpose. He cannot make title to himself, either by running lines or building fences, and when title is granted by the Commonwealth to another, that title draws to itself a constructive possession which, according to many cases, enables the owner of it to maintain trespass against the intruder who enters to cut timber or do other acts of wrong. The judgment must be affirmed.